Filed 12/17/20  P. v. Vigil CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AARON ANTHONY VIGIL,<br><br>    Defendant and Appellant. | B298543<br><br>Los Angeles County<br>Super. Ct. No. KA117978 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge. Affirmed.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Senior Attorney General, Noah P. Hill and Steven E. Mercer Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Aaron Vigil of three felon in possession of a firearm charges and one felon in possession of ammunition charge. The trial court sentenced Vigil to consecutive terms on the firearm convictions and a two-year term for the ammunition conviction to be served concurrently. On appeal, Vigil contends his concurrent term for the ammunition conviction should have been stayed pursuant to Penal Code section 654 because he had a single intent and objective in possessing the firearms and ammunition.[1] We disagree with Vigil and affirm.

# PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed a complaint charging Vigil with eight felony counts: three counts of felon in possession of a firearm (§ 29800, subd. (a)(1); counts 3-5), one count of felon in possession of ammunition (§ 30305, subd. (a)(1); count 6); two counts of making criminal threats (§ 422, subd. (a); counts 7 & 8); and two counts of threatening a public officer (§ 71; counts 9 & 10). Concerning all counts, the information alleged Vigil committed the acts for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members. (§ 186.22, subd. (b)(1)(A).) The complaint also alleged that Vigil suffered a prior conviction – a violation of section 245, subdivision (a)(1) in 2000 – that qualified as both a prior serious

---

1        All undesignated statutory references are to the Penal Code.

felony conviction (§ 667, subd. (a)(1)) and a strike prior (§§ 667, subds. (b)-(i),1170.12).

As noted above, a jury found Vigil guilty of the three felon in possession of a firearm charges (counts 3-5), and one felon in possession of ammunition charge (count 6). The jury found Vigil not guilty of the two criminal threat charges (counts 7 and 8), and found all the gang allegations to be not true. In a bifurcated proceeding, Vigil admitted the prior conviction allegations. The trial court sentenced Vigil to state prison for two years and eight months, to be served consecutively to his 22-year sentence in a companion case. Vigil timely appealed.

## FACTUAL BACKGROUND

### I.     Prosecution Evidence

In April 2018, police responded to possible gunfire at a two-story building in Asuza. Vigil's barbershop was located on the top floor of the building and was accessible by a single stairwell. Upon arrival, police observed bullet strikes on the front of the barbershop. Surveillance video from the exterior of the building showed Vigil and another individual, Michaels, descending the stairway at 2:52 a.m. In the video, both were holding semi-automatic handguns. Vigil's gun was black. Michaels' was two-toned. At the time, both Vigil and Michaels were convicted felons.

Later that day, police executed a search warrant of Vigil's barbershop. At the time the warrant was executed, Vigil and three others were present. Police uncovered three firearms and ammunition in a drawer of a metal toolbox. The firearms included: (1) a two-toned, nine-millimeter Smith & Wesson semi-

3

automatic handgun; (2) a black, .40 caliber Glock semi-automatic handgun; and (3) a .38 Special revolver. All of the guns were loaded and appeared to be in working order. The black Glock and the Smith & Wesson were consistent with the guns Vigil and Michaels held in the surveillance video, respectively. The toolbox also contained additional rounds of .40 caliber and nine-millimeter ammunition. The .40 caliber ammunition was compatible with the black Glock, and the nine-millimeter ammunition was compatible with the two-toned Smith & Wesson.

## II.    Defense Evidence

Vigil testified that he and Michaels were cleaning the barbershop when they heard gunfire and dropped to the ground. After the shooting stopped, Vigil removed two guns from the toolbox, gave one to Michaels, and they both went out onto the stairway. Vigil testified that he armed himself because he feared for his life and the lives of others in the barbershop. Vigil admitted the guns were his and claimed he obtained them after two people in his community were killed in a shooting a few blocks from his barbershop. Because he was a convicted felon, Vigil purchased the guns illegally.

## DISCUSSION

Vigil was convicted of unlawful possession of a nine-millimeter Smith & Wesson handgun (count 3), a .40-caliber Glock handgun (count 4), and a .38 caliber revolver (count 5), and unlawful possession of ammunition (count 6). The trial court sentenced Vigil to consecutive 16-month terms on counts 3 and 4,

and concurrent two-year terms on counts 5 and 6. On appeal, Vigil alleges the court improperly ordered a concurrent sentence for the felon in possession of ammunition conviction. Specifically, Vigil argues the two-year concurrent sentence on the unlawful possession of ammunition conviction, count six, should have been stayed pursuant to section 654 because there was no evidence he had an intent and objective in possessing the guns that was separate from his possession of the ammunition. Instead, Vigil argues, he had a single intent and objective in possessing the firearms and the ammunition for them.

Pursuant to section 654, subdivision (a), "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision . . . ." "Section 654 precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts." (*People v. Evers* (1992) 10 Cal.App.4th 588, 602.) "'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' [Citations.]" (*Ibid.*) ""'If all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once." [Citation.]' [Citation.]" (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 129.) "If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise

indivisible course of conduct. [Citation.]" (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

While there are some instances where multiple punishment is lawful for possession of a firearm and ammunition, multiple punishment is prohibited when an "indivisible course of conduct" is present. (*People v. Lopez* (2004) 119 Cal.App.4th 132, 138 (*Lopez*).) For example, when ammunition is loaded into a firearm, section 654 precludes multiple punishment. (*Ibid.*) Similarly, when ammunition is either loaded into a gun or fired from a gun, a defendant does not have" different or multiple objectives" in possessing the gun and the ammunition. (*People v. Sok,* (2010) 181 Cal.App.4th 88, 100 (*Sok*).)

Unlike the defendants in *Lopez* and *Sok*, however, Vigil possessed both ammunition loaded into the guns as well as additional ammunition not loaded into any weapon. As the trial court described it, Vigil "had a cache of firearms and ammunition" stored in a clearly accessible location. These are possession crimes, and the jury concluded Vigil intended to possess both firearms and ammunition. Vigil's acquisition of several guns plus separate ammunition shows he harbored multiple objectives: possessing firearms and possessing

6

additional ammunition for those firearms. Because the additional ammunition was not loaded into the guns, the trial court was permitted to conclude its possession was not incidental to the act of possessing the guns. Thus there is substantial evidence from which the trial court could conclude Vigil harbored a separate intent to possess the additional ammunition. We therefore conclude the trial court did not stray beyond its broad latitude when it declined to apply section 654 to stay Vigil's sentence on the possession of ammunition conviction, and instead ordered it to run concurrently.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.